**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 24-11161

Non-Argument Calendar

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DAVID RIVERA,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20552-MD-1

---

Before LAGOA, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

David Rivera is currently awaiting trial on several charges stemming from his alleged involvement in unauthorized political activities within the United States on behalf of the Venezuelan

government. In this interlocutory appeal, he challenges the pretrial restraint of his real property subject to criminal forfeiture. After careful review, we affirm.

**I. BACKGROUND**

In November 2022, Rivera, along with a codefendant, was indicted for: (1) conspiracy to commit an offense against the United States; (2) failure to register as a foreign agent; (3) conspiracy to commit money laundering; and (4) four counts of engaging in transactions in criminally derived property. The indictment included forfeiture allegations identifying certain property owned by Rivera as assets traceable to the charged offenses. To the extent that such property had been disposed of, or commingled with other property, the government also identified certain "substitute property" subject to forfeiture, including, as relevant here, Rivera's real property located at 3663 S. Atlantic Ave., Unit 20C, New Smyrna Beach, Florida 32169 (the "Property").

Shortly after the grand jury returned the indictment, the government recorded notices of lis pendens on the Property and the other substitute assets. Rivera moved to release the lis pendens, arguing that the pretrial restraint of substitute assets was improper under Florida and federal law. A magistrate judge granted Rivera's motion on July 6, 2023.

Just eight days later, the government moved ex parte for a protective order to restrain and enjoin the Property under 21 U.S.C. § 853(e)(1)(A). It explained that, upon further investigation, it had discovered that Rivera had used criminally derived funds, in part,

to purchase the Property, so it was now subject to direct forfeiture. Acknowledging that the Property had not been presented to the grand jury for a probable-cause determination, the government submitted the declaration of Internal Revenue Service Agent Stephan George. In his declaration, Agent George explained that forensic accountants had reviewed Rivera's bank records and, applying the first-in, first-out ("FIFO") methodology, determined that a $15,000 deposit and an additional $126,494 used by Rivera to purchase the Property were traceable to the charged offenses.

The district court found that Agent George's declaration sufficiently established probable cause to believe that the Property was subject to forfeiture upon Rivera's conviction, granted the government's application, and issued an order restraining and enjoining the Property.

The next day, Rivera moved to vacate the order, arguing that the government had continually categorized the Property as a substitute asset and only changed course after the magistrate judge issued an adverse ruling. At a subsequent hearing, the district court emphasized that the government's actions "reek[ed] of gamesmanship" because it likely knew that the Property was tainted one to two months prior to the magistrate judge's order but failed to notify the judge. The court acknowledged that it already had determined that Agent George's declaration established probable cause, but it nonetheless vacated its ex parte order and directed the parties to brief the issues.

Rivera argued, in relevant part, that the government was not entitled to a protective order under § 853(e) because any purportedly tainted funds used to purchase the Property were commingled with innocent funds and could not be divided without difficulty. He thus maintained that the Property remained a substitute asset not subject to pretrial restraint, under 21 U.S.C. § 853(p)(1)(E). Rivera asserted that the FIFO methodology was inaccurate because it relied on assumptions, and Agent George ignored the fact that more than $200,000 in innocent funds were in the subject account at the time of the Property's purchase. He also requested an evidentiary hearing if the court found that the record was insufficiently developed on this issue.

To support his response, Rivera submitted the declaration of Stanley Foodman, a certified public accountant specializing in forensic accounting, who attested, as relevant, that it was "impossible from an accounting standpoint to divide the tainted [and] untainted funds," and the government's use of FIFO "appear[ed] to be nothing more than a self-selected, result-oriented device which allowed [it] to ignore the more than $200,000 of untainted funds in the [relevant] account at the time of the [subject] transfers, which [wa]s considerably more than the $141,494 in allegedly tainted transfers."

Following its reply, the government filed a superseding indictment, which additionally charged Rivera with two counts of making and subscribing a false tax return, and one count of attempting to evade or defeat tax. While the superseding indictment

contained forfeiture allegations, it did not list the Property as either a direct or substitute asset. The next day, however, the government filed a Bill of Particulars seeking forfeiture of the Property, noting that it "elected not to present the forfeiture nexus for [the Property] to the grand jury for probable-cause determination" because it was currently the subject of ongoing litigation.

The district court thereafter addressed the pending protective order application at a non-evidentiary hearing. The government argued that Rivera's request for an evidentiary hearing was premature, and, instead, he must wait until after the court issued an order restraining the Property, at which point he would be entitled to an evidentiary hearing only if he showed a need for the Property to pay for counsel. It maintained that Agent George's declaration sufficiently traced the tainted funds to the purchase of the Property, and no authority supported Rivera's contention that tracing commingled funds is not possible. Upon questioning from the court, the government reiterated that it chose not to include the Property in the superseding indictment because of the court's earlier comments regarding "gamesmanship" and the fact the Property was the subject of ongoing litigation.

Rivera responded that the government was "putting the cart before the horse" because there was no restraining order against the Property. He also reasserted that the court could not restrain the Property in the first place because it "must, by law, be treated as a substitute asset," and challenged the reliability of Agent George's declaration. Following additional argument from the

parties, Rivera stated that "if the record evidence . . . [was] insufficient for [the court]," an evidentiary hearing was necessary.

The district court thereafter granted the government's application by paperless order. The court found "that there [wa]s probable cause to believe that $141,494 of funds traceable to the conspiracy charged in the [i]ndictment . . . were used (along with untainted funds) to purchase the [Property]."

Rivera moved for reconsideration, challenging the court's probable cause finding, and arguing that it failed to address the controlling statutes and caselaw. Rivera also reiterated that "if the [c]ourt fe[lt] that an evidentiary hearing [wa]s necessary to further develop the record . . ., [he] [wa]s in full support." The court denied the motion by paperless order, briefly reiterating its previous reasoning and rejecting Rivera's arguments.[1]

This appeal followed. Rivera's trial is currently set for February 9, 2026.

## II. STANDARD OF REVIEW

We have jurisdiction to entertain appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing[,] or dissolving injunctions." 28 U.S.C. § 1292(a)(1). "Protective orders designed to preserve forfeitable assets . . . qualify as injunctions for the jurisdictional purposes of § 1292(a)(1)."

[1] The same day it denied Rivera's reconsideration motion, the district court granted Rivera's request for leave to sell the Property and retain its value minus the $141,494 in tainted funds.

*United States v. Kaley* (*Kaley I*), 579 F.3d 1246, 1252 (11th Cir. 2009). While we review the grant of an injunction for an abuse of discretion, we review any underlying legal conclusions de novo and any factual findings for clear error. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270 (11th Cir. 2020).

We generally review constitutional questions de novo. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2706 (2025). However, when a defendant raises a constitutional challenge for the first time on appeal, we review only for plain error. *Id.*

## III. DISCUSSION

The post-conviction forfeiture of property constituting, or derived from, any proceeds obtained from a criminal offense is governed by 21 U.S.C. § 853. As relevant here, to preserve such property during the pendency of a case, a district court may enter a pretrial protective order restraining and enjoining the property:

> Upon the filing of an indictment or information charging a violation of this subchapter or subchapter II for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section[.]

21 U.S.C. § 853(e)(1)(A). A pretrial restraint under § 853(e) must be "based on a finding of probable cause to believe that the property

will ultimately be proved forfeitable." *United States v. Monsanto*, 491 U.S. 600, 615 (1989).

On appeal, Rivera challenges both the district court's failure to hold an evidentiary hearing on traceability and the court's independent determination of probable cause. We deny each challenge.

A. *District Court's Failure To Hold An Evidentiary Hearing*

Rivera argues that the district court's failure to hold an evidentiary hearing to determine whether the Property was traceable to the charged crimes violated his rights to due process and a grand jury under the Fifth Amendment. *See* U.S. CONST. amend. V.

Before reaching the merits of Rivera's arguments, however, we must determine the appropriate standard of review. The government argues that we should review only for plain error, while Rivera contends that his requests for an evidentiary hearing below preserved these constitutional challenges. We agree with the government.

A review of the proceedings below show that Rivera never definitively requested an evidentiary hearing or asserted that the district court's failure to hold such a hearing violated his Fifth Amendment rights. Instead, Rivera repeatedly conditioned his requests on the district court's preference for additional factfinding, rather than the contention that the failure to do so amounted to a constitutional deprivation.

While we recognize that "parties are not limited to the precise arguments they made below," Rivera's conditional requests for

an evidentiary hearing before the district court are simply not the same as his contention on appeal that he had a Fifth Amendment right to such a hearing. *United States v. Brown*, 934 F.3d 1278, 1306–07 (11th Cir. 2019) (citation modified); *cf. Gould v. Interface, Inc.*, 153 F.4th 1346, 1355 (11th Cir. 2025) ("A party cannot usually argue that a legal text should be read to mean something different on appeal than what it argued below. By contrast, a party can cite new interpretive rules and authorities to bolster its previously presented theory that a text has particular meaning." (citation modified)). We are therefore limited to plain-error review and conclude that Rivera cannot succeed under this heightened standard because, "at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Morales*, 987 F.3d 966, 976 (11th Cir. 2021) (citation modified).

Because the district court vacated its initial ex parte order restraining the Property, Rivera's subsequent challenge to the government's application for a protective order constituted a pre-restraint challenge. We recognize that "the prosecution cannot unilaterally restrain a defendant's assets between the time of indictment and trial." *United States v. Kaley* (*Kaley II*), 677 F.3d 1316, 1327 (11th Cir. 2012) (discussing the nature and scope of a post-restraint hearing), *aff'd and remanded*, *Kaley v. United States* (*Kaley III*), 571 U.S. 320 (2014). However, § 853(e)(1)(A) does not explicitly require an evidentiary hearing for the restraint of assets post-indictment. *Compare* 21 U.S.C. § 853(e)(1)(A), *with id.* § 853(e)(1)(B)

(requiring the "opportunity for a hearing" for the restraint of assets pre-indictment); *see United States v. Bissell*, 866 F.2d 1343, 1349 (11th Cir. 1989). Further, we have determined that an indicted defendant is not entitled to a pre-restraint evidentiary hearing. *See Bissell*, 866 F.2d at 1352 ("[A]ppellants had no right to a hearing before the government restrained their assets.").

Rivera points us to no binding authority holding that an evidentiary hearing is required when the district court, rather than a grand jury, makes the probable-cause determination on traceability for the pretrial restraint of assets. *See Monsanto*, 491 U.S. at 615 n.10 (declining to consider "[w]hether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed"); *see also Bissell*, 866 F.2d at 1355 (holding that when "the district court has made a determination of probable cause, either on his own or upon the grand jury's return of the indictment, there has been no improper denial of defendant's Sixth Amendment right to counsel of choice"). In fact, the Supreme Court has noted that traceability is a "technical matter far removed from a grand jury's core competence and traditional function—to determine whether there is probable cause to think the defendant committed a crime." *Kaley III*, 571 U.S. at 331 n.9. Rivera likewise has not cited any authority requiring a pre-restraint evidentiary hearing simply because the Property was included in a Bill of Particulars rather than the superseding indictment. *See* Fed. R. Crim. P. 32.2(a) ("The indictment . . . need not identify the property subject to forfeiture . . . .").

We note that Rivera argues in his reply brief that this is a post-restraint case because he requested an evidentiary hearing in his motion for reconsideration, which was filed after the district court issued the protective order. Our Court has recognized that an indicted defendant may be entitled to a post-restraint evidentiary hearing in certain circumstances. *See Bissell*, 866 F.2d at 1352–54 (applying the balancing test used in speedy-trial analyses to conclude that the delay of a post-restraint hearing until trial was reasonable). However, Rivera abandoned any contention that the district court erred in evaluating any hearing request included in his reconsideration motion by failing to include such an argument in his initial brief. *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc); *see United States v. Castillo*, 899 F.3d 1208, 1215 (11th Cir. 2018) ("An appellant in a criminal case may not raise an issue for the first time in a reply appellate brief." (citation modified)).

Accordingly, we find no plain error in the district court's failure to hold an evidentiary hearing on the issue of traceability and note that Rivera "will ultimately receive a thorough hearing—[his] trial." *Kaley II*, 677 F.3d at 1327.

### B. *The District Court's Probable-Cause Determination*

Rivera also argues that the district court erred in finding there was probable cause to believe that $141,494 of the funds used to purchase the Property were traceable to the charged offenses. We disagree.

Probable cause is not a high bar, and "determines only whether adequate grounds exist to proceed to trial." *Kaley III*,

571 U.S. at 339. In this case, the government submitted Agent George's affidavit, which detailed the tainted deposits into Rivera's bank accounts and the subsequent withdrawals from those accounts to pay the initial deposit on the Property and a portion of its purchase price.

As he did below, Rivera relies on *In re Rothstein, Rosenfeldt, Adler, P.A.*, to argue that the Property must be treated as a substitute asset because the commingled funds could not be divided without difficulty. However, in *Rothstein*, we considered a post-conviction dispute between the government and a bankruptcy trustee over claims to a defendant's forfeited cash, where the tainted funds had been deposited into bank accounts and commingled with legitimate income from the billings of 70 lawyers over 4 years. 717 F.3d 1205, 1206–11 (11th Cir. 2013). In short, our analysis in *Rothstein*, a *post-conviction* case that did not address the probable cause standard for commingled funds, simply has no bearing on whether the district court erred in determining there was probable cause to restrain the Property *prior* to Rivera's trial. *See id.* at 1213–14. And, despite Rivera's suggestions to the contrary, the probable cause standard "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Indeed, it is "sufficient" for a probable-cause determination to be made after "hearing only the prosecutor's side." *Kaley III*, 571 U.S. at 338 (citation modified).

We therefore conclude that the district court did not err in finding that Agent George's affidavit was sufficient to demonstrate that there was probable cause to believe that the Property had the requisite connection to Rivera's charged crimes.

## IV. CONCLUSION

We **AFFIRM** the district court's pretrial restraint of the Property.